NOT DESIGNATED FOR PUBLICATION

Nos. 129,527
129,528

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of A.M. and T.M.,
Minor Children.

MEMORANDUM OPINION

Appeal from Butler District Court; JOE E. LEE, magistrate judge. Submitted without oral argument. Opinion filed April 3, 2026. Affirmed.

*Chris J. Pate*, of Pate & Paugh, LLC, of Wichita, for appellant natural father.

*Cheryl M. Pierce*, assistant county attorney, for appellee.

*Stephany L. Hughes*, of El Dorado, guardian ad litem.

Before WARNER, C.J., ATCHESON and CLINE, JJ.

PER CURIAM: Father appeals the Butler County District Court's order terminating his right to parent his daughter A.M. and his son T.M. The district court found Father unfit on numerous statutory grounds, that those conditions were unlikely to change in the foreseeable future, and that termination would be in the best interests of the children. Father has marshalled no legal bases undermining the district court's determinations. We, therefore, affirm.

1

Concerns about the family arose in early 2023 because they were living in a camper without working utilities. At the time, Father and Mother were residing with A.M., who was then about two years old, and E.S., Mother's nine-year-old daughter from an earlier relationship. Mother was pregnant with T.M. State agents initially attempted to assist the family without stepping in to remove the children from the household. Those efforts failed. The State obtained an order in April 2023 temporarily placing the children, including the new-born T.M., in the custody of the Department for Children and Families (DCF). The district court adjudicated the children to be in need of care about three months later. The State filed an in need of care case for each child. And the district court routinely considered both cases in tandem. We consolidated the cases for appeal. A social service agency developed a plan for family reunification, assigning various tasks to Father and Mother.

From the outset, Father was verbally combative, oppositional, and aggressive with personnel from the social service agency and others. He willfully refused to cooperate with the agency's requests for releases to verify that he participated in assigned mental health counseling, that he was employed as he claimed, and that he completed other aspects of the family reunification plan. The evidence also showed that Father repeatedly used racial and sexual slurs when speaking to or about E.S. E.S.'s natural father is Black, and she identifies as biracial.

The district court entered a no-contact order as to E.S. That limited Father to biweekly supervised visits with A.M. and T.M. Those sessions did not go well. Father tended to ignore T.M., and his interactions with A.M. were often punctuated with inappropriate language and complaints about E.S., agency workers, and others.

Throughout the district court proceedings, the family moved from camper to camper and occasionally to houses. But they never established any long-term residence considered suitable for the children. Shortly before the termination hearing, Father claimed to have an appropriate camper. But the social service agency could not verify his representation.

Father was diagnosed with Attention Deficit and Hyperactive Disorder. Evidence admitted during the termination hearing indicated Father also suffered from Unspecific Disruptive, Impulse Control and Conduct Disorder that caused "clinically significant distress or impairment in social, occupational, or other important areas of functioning." The social service agency referred Father to a clinical psychologist for evaluation. The psychologist concluded Father might have bipolar disorder or a similar character disorder and recommended that he participate in ongoing therapy with an experienced doctorate level psychologist—something Father never did. In the psychologist's opinion, Father had little chance to successfully complete a family reunification plan without that sort of intensive, continuing therapy.

In short, Father displayed little tangible progress in meeting the goals established in the reunification plan and remained largely uncooperative and antagonistic throughout the course of the proceedings. The State filed motions to terminate Father's and Mother's parental rights in January 2025. As to Father, the State alleged multiple grounds of unfitness under K.S.A. 38-2269: (b)(1) due to emotional or mental illness, Father was unable to meet the needs of A.M. and T.M; (b)(2) Father had exhibited conduct toward E.S. of a mentally and emotionally abusive nature; (b)(4) Father had physically, mentally, or emotionally neglected A.M. and T.M.; (b)(7) reasonable efforts of the social service agency and others had failed to rehabilitate the family; (b)(8) Father had failed to adjust his circumstances, conduct, or condition to meet the needs of A.M. and T.M.; (c)(2) Father failed to maintain regular visitation with A.M. and T.M.; (c)(3) Father had failed to carry out the reintegration plan; and (c)(4) Father had failed to pay a reasonable

3

portion of the cost of substitute physical care and maintenance during his children's out-of-home placement.

The district court heard testimony and received other evidence in a termination hearing over three days in May 2025. The district court filed an order of termination in June finding that each of the grounds of unfitness asserted in the State's motions had been proved by clear and convincing evidence and the unfitness was unlikely to change in the foreseeable future. The district court also found that the best interests of A.M. and T.M. supported termination of Father's parental rights. Father has appealed. Mother and E.S. are not parties to or otherwise involved in this appeal.

LEGAL ANALYSIS

On appeal, Father challenges the sufficiency of the evidence supporting the district court's findings of unfitness on all but one of the grounds. He likewise challenges the district court's best interests finding. But he does not offer a direct attack on the district court's unlikelihood of change determination. Nonetheless, we consider all three aspects of the termination order. We first outline the governing legal principles and then apply those principles to the circumstances of this case.

*Governing Legal Principles Outlined*

A person has a constitutionally recognized right to a parental relationship with their child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008) (citing *Santosky*, 455 U.S. 745). The right is a constitutionally protected liberty interest. See *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (substantive liberty interest); *Pierce v. Society of the Sisters*, 268 U.S. 510, 534-35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925) (recognizing "the liberty of parents and guardians to direct

4

the upbringing and education of children under their control"). Accordingly, the State may extinguish the legal bond between a parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014). The Legislature has enacted the Revised Kansas Code for Care of Children to establish processes for finding children in need of care, for fostering family reunification, and for terminating parental rights if those efforts fail. K.S.A. 38-2201 et seq.

After a child has been adjudicated in need of care, a district court may terminate parental rights "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 38-2269(a). In considering a parent's unfitness, the district court may apply the grounds outlined in K.S.A. 38-2269(b) and, when the child has been removed from the home for an extended time, the additional factors in K.S.A. 38-2269(c). In this case, the district court drew from both of those sources to find Father unfit. A single factor may be sufficient to establish unfitness. See K.S.A. 38-2269(f).

In gauging the likelihood of change in the foreseeable future under K.S.A. 38-2269(a), the courts should use "child time" as the measure. As the Code recognizes, children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that difference in perception typically tilts toward a prompt, permanent disposition. K.S.A. 38-2201(b)(4); *In re M.S.*, 56 Kan. App. 2d 1247, 1263-64, 447 P.3d 994 (2019); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'" differs from "'adult time'" in termination of parental rights proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's").

5

When the sufficiency of the evidence supporting a decision to terminate parental rights is challenged, an appellate court will uphold the decision if, after reviewing the record evidence in a light most favorable to the State as the prevailing party, the district court's findings on unfitness and foreseeability of change are supported by clear and convincing evidence. Stated another way, the appellate court must be persuaded that a rational fact-finder could have found it highly probable that the circumstances warrant the termination of parental rights. *In re B.D.-Y.*, 286 Kan. at 697, 705. In evaluating the record, the appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine factual questions. *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014).

The district court's best interests finding is governed by a less stringent standard. As directed in K.S.A. 38-2269(g)(1), the district court should give "primary consideration to the physical, mental[,] and emotional health of the child" in making a best interests finding. A district court decides best interests based on a preponderance of the evidence. See *In re R.S.*, 50 Kan. App. 2d at 1115-16. The decision essentially rests in the district court's sound judicial discretion. 50 Kan. App. 2d at 1116. An appellate court reviews those sorts of conclusions for abuse of that discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *In re M.S.*, 56 Kan. App. 2d at 1264.

*Governing Legal Principles Applied*

We look at each of the grounds of unfitness the district court relied on in terminating Father's parental rights. As our discussion illustrates, those statutory

6

circumstances sometimes overlap. We then address unlikelihood of change and the children's best interests.

*Unfitness*

• Under K.S.A. 38-2269(b)(1), a district court may make a finding of unfitness if it determines a parent has an "[e]motional illness, mental illness, mental deficiency or physical disability" of "such duration or nature as to render the parent unable to care for the ongoing physical, mental[,] and emotional needs of the child." A parent's disability may not be a basis for termination absent a specific showing "that there is a causal relation between the disability and harm to the child." K.S.A. 38-2001(c)(1). Here, the evidence sufficiently supports a conclusion that Father's mental health issues and the accompanying diagnoses left him unable to meet the ongoing emotional needs of A.M. and T.M. They were placed in DCF custody at least in part because of Father's unwillingness to cooperate in any meaningful way with the initial efforts to assist the family. And his continuing antagonism toward the social service agency grossly impaired his ability to parent the children in any meaningful way going forward through the termination hearing.

Father had, at best, a limited parental bond with A.M. when she was placed in DCF custody, and he had no relationship with T.M. Father then had only intermittent and decidedly limited contact with A.M. and T.M. As we have outlined, Father made little productive use of those opportunities, especially with T.M. In turn, Father took no concrete or demonstrable steps to address his mental health issues through an orchestrated therapy regimen. In sum, Father could not and did not provide the sort of emotional support necessary to adequately parent A.M. and T.M.

• A parent may be unfit if they have exhibited "conduct toward a child of a physically, emotionally[,] or sexually cruel or abusive nature." K.S.A. 38-2269(b)(2).

7

Unfitness under this subsection may be based on a parent's conduct directed at a child other than the one subject to the need of care proceeding. The phrase "a child," using an indefinite article, establishes such legislative intent in contrast to, for example, subsection (b)(1) that uses "the," a definite article in describing unfitness with respect to the subject child. See *In re R.B.S.*, 29 Kan. App. 2d 1023, 1028-29, 36 P.3d 300 (2001) (so construing identical terminology in predecessor statute); see also *State v. Henning*, 289 Kan. 136, 139-40, 209 P.3d 711 (2009) (discussing difference between "the" as definite article and "a" as indefinite article); Garner's Modern English Usage 1195 (5th ed. 2022) (describing use of definite and indefinite articles). Father acknowledges this construction of subsection (b)(2). While the subsection includes the child subject to the need of care proceeding, the language does not limit the ground to that child.

In considering unfitness under this subsection, the district court properly considered Father's conduct toward E.S. and his chronic verbal abuse of her using especially virulent racial and sexual slurs. The evidence established that Father's treatment of E.S. left her emotionally vulnerable and often demonstrably upset. Again, there was sufficient evidence to support a finding of unfitness under subsection (b)(2), especially since E.S. resided in the household and the abuse was ongoing. We need not (and do not) consider whether in some cases a parent's conduct toward another child might be too remote in time or place to warrant a finding of unfitness under subsection (b)(2). That case is not this case.

• Under K.S.A. 38-2269(b)(4), unfitness may be based on the "physical, mental[,] or emotional abuse or neglect . . . of a child." This subsection is similar to subsection (b)(2). But subsection (b)(2) focuses on the nature of the parent's conduct, and subsection (b)(4) focuses on the effect of the conduct on a child. Without repeating ourselves, Father's continuing verbal attacks on E.S. amounted to emotional abuse of her. She displayed readily identifiable negative consequences of that harassment, thereby supporting a finding of parental unfitness under subsection (b)(4).

8

In addition, all three children faced physical neglect given their living conditions when the State initially intervened with the family and then removed the children from the home a few months later. The residence was dirty, trash-ridden, and regularly without working utilities—conditions that amount to neglect. And there continued to be issues with the lack of stable, suitable housing over the course of the proceedings.

• A parent may be unfit based on the "failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family." K.S.A. 38-2269(b)(7). As we have described, Father essentially actively opposed and thwarted the social service agency and refused to participate in any meaningful way in the family reintegration plan it had designed. He defiantly would not cooperate in providing releases to verify his attendance at mental health counseling, his employment and income, and his participation in other aspects of the plan. Despite the agency's attention, the family never secured and sufficiently maintained suitable housing, undermining one of the basic components of any reunification plan. See *In re M.C.*, No. 127,132, 2024 WL 5002120, at *4 (Kan. App. 2024) (unpublished opinion); *In re Z.S.*, No. 125,707, 2023 WL 3031885, at *5 (Kan. App. 2023) (unpublished opinion) (describing "continuing employment" and "suitable housing" as "critical components" for family reunification).

The record shows the agency attempted to accommodate Father and to assist him. He continually rebuffed those efforts. Without some measure of parental cooperation, even the best reunification plans cannot succeed. Here, Father not only failed to cooperate, he actively opposed the agency's efforts.

• Under K.S.A. 38-2269(b)(8), a parent may be unfit based on their "lack of effort . . . to adjust [their] circumstances, conduct[,] or conditions to meet the needs of the child." Again, without belaboring the record, Father not only failed to accommodate the needs of A.M. and T.M. to succeed under the family reunification plan, he actively and aggressively refused to change his conduct and behavior to that end. He resisted

9

compliance at virtually every turn and, in doing so, confounded the agency's efforts to establish the family had suitable housing and sufficient income to meet the needs of the children under the reunification plan. Likewise, Father refused to acknowledge or to take steps to address his mental health issues that appeared to be a root cause of his failure to accommodate the children and the reunification plan. The evidence supported the district court's conclusion of unfitness.

• The district court also relied on three grounds of unfitness under K.S.A. 38-2269(c). Father does not dispute that A.M. and T.M. were in an out-of-home placement long enough to trigger those grounds. See K.S.A. 38-2269(b)(9) (factors in subsection [c] considered in assessing unfitness if child in DCF custody for "15 of the most recent 22 months beginning 60 days after" child removed from home). First, the district court found Father unfit under K.S.A. 38-2269(c)(2) for failing "to maintain regular visitation, contact[,] or communication" with A.M. and T.M. As we have described, Father had only intermittent and limited supervised visits with the children. He otherwise had no contact with them over the course of these proceedings. As a result, Father never developed a parental bond with either A.M. or T.M. He never sought more communication with the children or adjusted his conduct to secure more extended visits through the social service agency. Those circumstances establish unfitness.

Second, the district court found Father failed "to carry out a reasonable plan" for "the integration of the child into a parental home" under K.S.A. 38-2269(c)(3). This subsection largely mirrors factors in subsections (b)(7) and (b)(8) and applies when the child has been in an extended out-of-home placement. For the reasons we have described in our discussion of those subsections, the district court properly found Father unfit under subsection (c)(3) as well.

Finally, the district court found Father unfit under K.S.A. 38-2269(c)(4) because he failed "to pay a reasonable portion of the cost of substitute physical care and

10

maintenance" of A.M. and T.M. during their out-of-home placement based on his ability to pay. On appeal, Father does not dispute the sufficiency of the evidence to support this ground of unfitness. We decline to look behind that concession. Father argues that nonpayment alone would not warrant termination of his parental rights. We similarly decline to engage that proposition because it amounts to a hypothetical. We have found the district court had ample evidence to find Father unfit based on seven other statutory grounds, so his failure under subsection (c)(4) is legally irrelevant to the ultimate outcome.

### *Unlikelihood of Change*

On appeal, Father has made no direct argument focused on the district court's conclusion that his unfitness was unlikely to change in the foreseeable future. We nevertheless consider the point briefly. Foreseeability is governed by child time. Given the young ages of A.M. and T.M. in May 2025, when the district court heard the termination motions, the time horizon for obviating parental unfitness is an especially short one. For teenagers, the foreseeable future typically would entail a longer period.

Here, Father's antagonism to the overall process never changed, and he continued his obstinate refusal to comply throughout the judicial process. In May 2025, there was no reason to assume Father's attitude would change anytime soon. Indeed, the psychologist who evaluated Father predicted just that sort of obdurate behavior absent intensive outpatient therapy. The district court's determination was well-founded, given the evidence.

### *Best Interests Determination*

What we have said to this point informs our review of the district court's conclusion that the best interests of A.M. and T.M. warranted termination of Father's

parental rights. We see no legal error or factual misunderstanding in the district court's assessment of the children's best interests weighed against Father's parental rights. Under an abuse of discretion standard, we are left to ask whether the determination was so off the mark that no other district court would have come to the same conclusion in comparable circumstances. Framed that way, the outcome is plain. Other district courts would have found the children's best interests favored termination.

Father had no developed parental relationship with either child when they were placed in DCF custody, and that did not change over the course of these proceedings. Father displayed no interest in cultivating a healthy, well-anchored relationship with either A.M. or T.M. Apart from those considerations, Father failed to secure suitable housing for the children after they had been placed in DCF custody and declined to verify his claimed employment and income. Accordingly, the district court properly considered Father's failure to provide those foundational elements for successful family reunification in assessing what would promote the children's wellbeing. We find no abuse of discretion in the district court's conclusion that A.M. and T.M.'s best interests were furthered through their structured out-of-home placement rather than prolonging efforts at reunification.

Affirmed.